David P. Enzminger (SBN: 137065)
denzminger@winston.com
Michael A. Tomasulo (SBN: 179389)
mtomasulo@winston.com
Diana Hughes Leiden (SBN: 267606)
dhughes@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
Tel:    (213) 615-1700
Fax:    (213) 615-1750

*Attorneys for Plaintiffs*
PUBG Corporation and PUBG Santa Monica, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PUBG CORPORATION AND PUBG SANTA MONICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NETEASE, INC., NETEASE INFORMATION TECHNOLOGY CORPORATION AND HONG KONG NETEASE INTERACTIVE ENTERTAINMENT LIMITED, <br><br> Defendants. | **Case No.  4:19-cv-06615-JSW (*PUBG II*)** <br><br> Related to: Case No. 4:18-cv-02010-JSW (*PUBG I*) <br><br> **PLAINTIFFS PUBG CORPORATION AND PUBG SANTA MONICA, INC.'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION** <br><br> *PUBG I* Complaint filed:    4/2/2018 <br> *PUBG II* Complaint filed:    10/15/2019 <br><br> Hon. Jeffrey White <br> Courtroom 5 <br> Date: March 13, 2020 <br> Time: 9:00 a.m. |

## ***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

## NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT

## (Civil L.R. 7-2(b))

**PLEASE TAKE NOTICE** that on March 13, 2020, or as soon thereafter as this matter may be heard in Courtroom 5, of the above-entitled Court located at 1301 Clay Street, Oakland, CA 94612, Plaintiffs PUBG Corporation and PUBG Santa Monica, INC. ("PUBG"), will present their Motion for Preliminary Injunction (the "Motion") against Defendants NetEase Inc., NetEase Information Technology Corporation, and Hong Kong NetEase Interactive Entertainment Limited ("NetEase") as set forth in the Proposed Preliminary Injunction filed concurrently with this Motion.

This Motion is brought pursuant to Federal Rule of Civil Procedure 65 and Local Rule 65-1 on the grounds that entry of a preliminary injunction is appropriate because PUBG has established (1) a likelihood of prevailing on the merits of its claims; (2) that it is likely to suffer irreparable harm in the absence of injunctive relief; (3) that the balance of equities tips in PUBG's favor; and (4) that the preliminary injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

This Motion is based on the attached Memorandum of Points and Authorities, the Declarations of Justin Bongco and Jinyung Lee and the exhibits attached thereto, the related pleadings in this case, and any other matters as may be presented to the Court at or before the hearing.

Dated:  February 3, 2020          WINSTON & STRAWN LLP

By:  */s/ David P. Enzminger*
David P. Enzminger
Michael A. Tomasulo
Diana Hughes Leiden

*Attorneys for Plaintiffs*
PUBG Corporation and
PUBG Santa Monica, Inc.

1

# <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3

SUMMARY OF ARGUMENT ........................................................................................... 1

4

I.      INTRODUCTION ................................................................................................... 1

5

II.     RELEVANT FACTUAL BACKGROUND ............................................................ 1

6

        A.    PUBG Sues NetEase for Infringing PUBG's Rights in BATTLEGROUNDS ................ 1

7

        B.    ███████████████████████████████ ........................................ 2

8

9

        C.    PUBG Discovers that NetEase ████████████████████ ................... 3

10

III.    LEGAL STANDARD ............................................................................................. 3

11

IV.     PUBG IS ENTITLED TO A PRELIMINARY INJUNCTION AGAINST NETEASE .... 4

12

        A.    PUBG Is Likely to Prevail on the Merits of Its Breach of Contract Claim ....................... 4

13

               1.    ████████████████████████ ........................ 5

14

               2.    By Failing to ████████████████████████ ........ 6

15

               3.    All NetEase ████████████████ Breaches of the Settlement Agreement ................................... 10

16

        B.    PUBG Will Suffer Continued and Increasing Irreparable Harm Without the Requested Relief ................................................................................. 11

17

18

               1.    Under the Settlement Agreement, ████████████████ ................................................ 12

19

               2.    PUBG Will Suffer Irreparable Harm to Its Business Reputation ........................... 12

20

        C.    The Equities Weigh in Favor of PUBG's Requested Relief ............................................ 14

21

        D.    Granting a Preliminary Injunction Is in the Public Interest ............................................ 14

22

V.      NO BOND SHOULD BE REQUIRED ................................................................... 15

23

VI.     CONCLUSION ...................................................................................................... 15

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*adidas Am., Inc. v. Skechers USA, Inc.*,
  890 F.3d 747 (9th Cir. 2018) ...................................................................................9

*Am. Impex Corp. v. Int'l Ace Tex, Inc.*,
  2009 WL 3963791 (C.D. Cal. Nov. 16, 2009)........................................................12

*Barahona-Gomez v. Reno*,
  167 F.3d 1228 (9th Cir. 1999) ...............................................................................15

*Beck Park Apartments v. U.S. Dep't of Housing and Urban Development*,
  695 F.2d 366 (9th Cir. 1982) ...................................................................................8

*Cherokee Inc. v. Wilson Sporting Goods Co.*,
  2015 WL 3930041 (C.D. Cal. June 25, 2015) .........................................................4

*Curry v. Moody*,
  40 Cal. App. 4th 1547 (1995) ..................................................................................8

*Davies v. Grossmont Union High Sch. Dist.*,
  930 F.2d 1390 (9th Cir.1991) ................................................................................15

*Disney Enters., Inc. v. VidAngel, Inc.*,
  869 F.3d 848 (9th Cir. 2017) ...............................................................................1, 3

*Duck Dive v. Heydari*,
  2014 WL 1271220 (C.D. Cal. Mar. 27, 2014)......................................................4, 12

*English & Sons, Inc. v. Straw Hat Rests., Inc.*,
  176 F. Supp. 3d 904 (N.D. Cal. 2016) .....................................................................9

*Herb Reed Enters, LLC v. Fla. Entm't Mgmt., Inc.*,
  736 F.3d 1239 (9th Cir. 2013) .........................................................................12, 13

*Internet Specialties W., Inc. v. Milon-DiGiorgio Enterprises, Inc.*,
  559 F.3d 985 (9th Cir. 2009) .................................................................................14

*Lockyer v. R.J. Reynolds*,
  107 Cal. App. 4th 516 (2003) ..................................................................................9

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
  634 F.2d 1197 (9th Cir. 1980) .................................................................................3

*Maxim Integrated Prods. v. Quintana*,
  654 F. Supp. 2d 1024 (N.D. Cal. 2009) .................................................................14

ii

*Metcalf v. Bochco*,
    294 F.3d 1069 (9th Cir. 2002) ...................................................................................9

*Neale v. Morrow*,
    88 P. 815 (Cal. 1907) .................................................................................................8

*O'Brien as Tr. of Raymond F. O'Brien Revocable Tr. v. XPO CNW, Inc.*,
    362 F. Supp. 3d 778 (N.D. Cal. 2018) .....................................................................4

*Powers v. Dickson, Carlson & Campillo*,
    54 Cal. App. 4th 1102 (1997) ...................................................................................9

*PUBG Corporation v. NetEase Inc.*,
    Case No. 4:18-cv-02010-JSW ("*PUBG I*") ...............................................................2

*Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*,
    9 44 F.2d 597 (9th Cir. 1991) .................................................................................13

*Santisas v. Goodin*,
    17 Cal. 4th 599 (1998) ...........................................................................................8, 9

*SMC Promotions. Inc. v. SMC Promotions*,
    355 F. Supp. 2d 1127 (C.D. Cal. 2005) .............................................................14, 15

*Stephen W. Boney, Inc. v. Boney Servs., Inc.*,
    127 F.3d 821 (9th Cir. 1997) ....................................................................................9

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*,
    240 F.3d 832 (9th Cir. 2001) ..................................................................................12

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
    846 F. Supp. 2d 1063 (N.D. Cal. 2012) .............................................................12, 13

*True N. Commc'ns Inc. v. Publicis S.A.*,
    711 A.2d 34 (Del. Ch. 1997) ..................................................................................12

*Univ. of Texas v. Camenisch*,
    451 U.S. 390 (1981) ..................................................................................................4

*Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*,
    766 F.2d 1319 (9th Cir. 1985) ................................................................................15

*Western Directories, Inc. v. Golden Guide Directories, Inc.*,
    2009 WL 1625945 (N.D. Cal. June 8, 2009) .........................................................14

*Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ..................................................................................4

*Winter v. Natural Res. Def. Council*,
    555 U.S. 7 (2008) ..................................................................................................1, 4

iii

**Statutes**

Cal. Civ. Code
    § 1638..................................................................................................................................9
    § 1639..................................................................................................................................9
    § 1644..................................................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 65 ...................................................................................................................3

1

**SUMMARY OF ARGUMENT**

2          Plaintiff PUBG is one of the most successful video game companies in the world. Its flagship

3   game, BATTLEGROUNDS, has been downloaded over half a billion times. In 2017, Defendant

4   NetEase copied PUBG's game and released its own unauthorized game, "borrowing" heavily from

5   PUBG's game, including stealing art work, game stories, themes, and other protectable elements.

6   PUBG sued NetEase in this Court for copyright and trademark infringement and unfair competition,

7   which—after more than a year of litigation—resulted in a Settlement Agreement

8

9                                                                 Unfortunately, NetEase has not

10   complied with the Settlement Agreement

11                                                    NetEase has filed a motion to dismiss that does

12   not dispute these facts and instead contends its obligations are a matter of contract interpretation.  *See*

13   ECF No. 30.

14          Each of the factors relevant to the preliminary injunction analysis weigh heavily in PUBG's

15   favor. *First*, PUBG has shown that it is "likely to succeed on the merits" in light of its documentation

16   of many instances in which NetEase

17                                           *Second*, PUBG has easily demonstrated that it is "likely to

18   suffer irreparable harm in the absence of preliminary relief"

19                                                       and in light of the substantial harm to its

20   business reputation and goodwill it is continually suffering as a result of NetEase's breaches.  *Third*,

21   "the balance of equities tips in [PUBG's] favor" because PUBG seeks to enforce a valid contract and

22   has shown it has already lost business as a direct result of NetEase's conduct.  *Finally*, granting this

23   preliminary injunction would further the public interest in protecting intellectual property rights,

24   enforcing settlement agreements, and encouraging the resolution of litigation short of trial.  *See*

25   *generally Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017); *Winter v. Natural*

26   *Res. Def. Council*, 555 U.S. 7, 20, 22 (2008).  For all of the reasons set forth herein, PUBG's motion

27   for a preliminary injunction should be granted.

28

## I.      INTRODUCTION

PUBG is entitled to a preliminary injunction to stop NetEase from continuing to violate the Settlement Agreement that resolved prior litigation between the parties.  NetEase's obligations under the Settlement Agreement are clear, PUBG is likely to prevail on the merits, and the Court may enforce the Settlement Agreement to protect PUBG from irreparable harm caused by NetEase's breaches.

## II.     RELEVANT FACTUAL BACKGROUND

### A.      PUBG Sues NetEase for Infringing PUBG's Rights in BATTLEGROUNDS

In or about March 2017, PLAYERUNKNOWN'S BATTLEGROUNDS ("BATTLEGROUNDS"), an online multiplayer "battle royale" game, was released in its early-access beta version. Declaration of Jinyung Lee ("Lee Decl.") ¶ 5. BATTLEGROUNDS became an instant hit and has achieved high levels of success in the computer gaming and console gaming industry. *Id.* ¶ 7. Indeed, upon its release, BATTLEGROUNDS sold one million copies in less than a month and reached the million-copies mark faster than any other game ever sold on Steam, a major online computer game distribution site. *Id.* By July 2017, BATTLEGROUNDS had achieved over one hundred million dollars in sales. *Id.* To date, over sixty million copies of the PC version of BATTLEGROUNDS, and over eight and a half million copies of the Xbox and PlayStation 4 versions of BATTLEGROUNDS have been sold. *Id.* ¶ 8. Players have also downloaded over 450 million copies of the mobile version of BATTLEGROUNDS. *Id.*

Due to its popularity, in addition to the overall gameplay and individual elements, certain aspects of the game became closely associated with the game. Lee Decl. ¶ 11. In particular, BATTLEGROUNDS introduced a frying pan that could be used for melee combat. *Id.* Due to a software coding error, the frying pan was inadvertently made indestructible, so when worn on a player's belt, it resulted in indestructible butt armor. *Id.* The inadvertently indestructible frying pan became an enormously popular unique feature of the game, so the error was never fixed but kept as part of the game. *Id.* Also, the last survivor is lauded with the fanciful phrase "Winner Winner Chicken Dinner!" *Id.* The popularity of BATTLEGROUNDS, especially in China, and the chicken dinner motif gave rise to the phrase "eating chicken" or "eat chicken" games. *Id.*; *see also* Declaration of Justin Bongco ("Bongco Decl."), Exs. I & J.

In late 2017, just a few months after PUBG released BATTLEGROUNDS, NetEase released two knock-off mobile games, *Rules of Survival* and *Knives Out*, that were copied from BATTLEGROUNDS. Lee Decl. ¶ 12. In response, PUBG sued NetEase in this Court, *PUBG Corporation v. NetEase Inc.*, Case No. 4:18-cv-02010-JSW ("Underlying Action" or "*PUBG I*"), alleging that NetEase's games *Rules of Survival* and *Knives Out* infringed PUBG's copyrights and trade dress rights in BATTLEGROUNDS and that NetEase had engaged in unfair competition under statutory and common law. Bongco Decl., Ex. C (Second Amended Complaint ("SAC").

On March 11, 2019, the parties entered a settlement agreement

After entering the Settlement Agreement, the parties filed a stipulation to dismiss the Underlying Action, which was granted on April 8, 2019. Bongco Decl., Exs. D & E.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19



**PUBG Discovers that NetEase**

PUBG filed this case to for breach of contract (hereinafter, *PUBG II*)

20  **III.    LEGAL STANDARD**

21      Federal Rule of Civil Procedure 65 provides for the issuance of a preliminary injunction. The

22  purpose of a preliminary injunction is to "preserve the status quo ante litem pending a determination

23  of the action on the merits." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d

24  1197, 1200 (9th Cir. 1980). The party seeking a preliminary injunction must show that (1) it is "likely

25  to succeed on the merits," (2) it is "likely to suffer irreparable harm in the absence of preliminary

26  relief," (3) "the balance of equities tips in [its] favor," and (4) "an injunction is in the public interest."

27  *Disney Enter., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (quoting *Winter v. Natural

28  Res. Def. Council*, 555 U.S. 7, 20, 22 (2008)). A preliminary injunction may also issue if there are

3

(1) "serious questions going to the merits" and (2) "the balance of hardships tips sharply in the [movant's] favor," provided that the second and fourth *Winter* factors are satisfied. *Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

## IV.    PUBG IS ENTITLED TO A PRELIMINARY INJUNCTION AGAINST NETEASE

Under the Settlement Agreement,

As set forth in detail below and in the attached evidence, NetEase has breached                      Because all of the prongs of the preliminary injunction analysis tip in PUBG's favor, the Motion should be granted.

### A.    PUBG Is Likely to Prevail on the Merits of Its Breach of Contract Claim

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Plaintiff "is not required to prove [its] case in full at a preliminary-injunction hearing." *Id.* At this stage, Plaintiffs must only demonstrate a "fair chance of success on the merits," *Duck Dive v. Heydari*, 2014 WL 1271220, at *1 (C.D. Cal. Mar. 27, 2014), or raise "serious questions" about the merits of their claims, *Cherokee Inc. v. Wilson Sporting Goods Co.*, 2015 WL 3930041 at *2 (C.D. Cal. June 25, 2015). As set forth below, PUBG has more than a "fair chance of success" of prevailing.

PUBG seeks an injunction

To prevail on a claim for breach of settlement agreement, a plaintiff must establish (1) the existence of a contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) resulting damages to plaintiff. *O'Brien as Tr. of Raymond F. O'Brien Revocable Tr. v. XPO CNW, Inc.*, 362 F. Supp. 3d 778, 784 (N.D. Cal. 2018). It is undisputed that a contract (the Settlement Agreement) exists between the parties. Similarly, it is undisputed that PUBG performed its obligations under the Settlement Agreement (in reliance on the Settlement Agreement, PUBG dismissed the Underlying Action). However, NetEase has breached

---

1

2 Each of NetEase's breaches is sufficient to show that PUBG

3 is likely to prevail on its breach of contract claim. Thus, this prong of the analysis is met.

4

5 On June 24, 2019, PUBG sent NetEase a letter notifying NetEase in detail of its breaches of

6 the Settlement Agreement. Lee Decl., Ex. B at 1-3; *id.*, Ex. A. In response,

7

8

9

10

11 This alone establishes the first prong of the preliminary injunction analysis.

12 First, on or about June 7, 2019, PUBG used in a *Rules of Survival*

13 YouTube video published on April 26, 2019 on NetEase's *Rules of Survival* YouTube home page. Lee

14 Decl. ¶ 40, ROS.A.6.

15

16

17

18

19 These are clear and admitted breaches

20

21

22 its

23 admission to breaching the Settlement Agreement establishes PUBG's likelihood of success in

24 establishing NetEase's breach. Nonetheless, NetEase has advised it intends to continue to breach the

25 Settlement Agreement

26 Second, PUBG also that violated the Settlement

27 Agreement. The first is

28



The second is

But

NetEase seeks to create ambiguity where none exists.

In any event,

**2.     By Failing to**

In addition to the                                                                                                    ,

NetEase has further breached the Settlement Agreement

Under the Settlement Agreement, NetEase agreed



Under the Settlement Agreement, NetEase agreed

Bongco Decl. ¶ 11.

Under the Settlement Agreement, NetEase agreed

Under the Settlement Agreement, NetEase agreed

████████████████████████████████████

As is clear from a simple comparison of images in the SAC and the images in the current versions of ████████████████████████████████████ establishes that NetEase still seeks to sell its copycat games.

"Interpretation of a contract is a matter of law," as is the determination of whether a contract is ambiguous. *Beck Park Apartments v. U.S. Dep't of Housing and Urban Development*, 695 F.2d 366, 369 (9th Cir. 1982). The "clear and explicit meaning" of contractual provisions "interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage, controls judicial interpretation. If the meaning a layperson would ascribe to contract language is not ambiguous," the Court applies that meaning. *Santisas v. Goodin*, 17 Cal. 4th 599, 608 (1998). Contract language is ambiguous if it is reasonably susceptible to more than one meaning. *See, e.g.*, *Curry v. Moody,* 40 Cal. App. 4th 1547, 1552 (1995).

Here, there is nothing ambiguous about ██████████ NetEase agreed ████████████████████████████████████ NetEase's interpretation would ████ and would lead to absurd outcomes. *Neale v. Morrow*, 88 P. 815, 817 (Cal. 1907) ("It is a cardinal rule that in the interpretation of a contract every word used therein is to be given its full meaning and effect. And, in the construction of a written instrument in

1    order to ascertain what was meant by the language used, the object in view and the circumstances

2    surrounding the execution of the instrument are properly to be taken into consideration for that

3    purpose."); *English & Sons, Inc. v. Straw Hat Rests., Inc.*, 176 F. Supp. 3d 904, 914 (N.D. Cal. 2016)

4    ("Interpretation of a contract must be fair and reasonable, not leading to absurd conclusions.").

5            Second, the interpretation of the Settlement Agreement is also governed by the mutual intent

6    of the parties when the agreement was formed. *Santisas*, 17 Cal. 4th at 608. The Court infers the

7    parties' intent from the language of the Settlement Agreement and focuses "on the usual and ordinary

8    meaning of the language and the circumstances under which the agreement was made." *Powers v.*

9    *Dickson, Carlson & Campillo*, 54 Cal. App. 4th 1102, 1111 (1997); *see also* Cal. Civ. Code §§ 1638,

10   1639, 1644; *Santisas*, 17 Cal. 4th at 608. When the Court interprets a contract to determine the parties'

11   intent, "'[t]he whole of [the] contract is to be taken together, so as to give effect to every part, if

12   reasonably practicable, each clause helping to interpret the other." *Lockyer v. R.J. Reynolds*, 107 Cal.

13   App. 4th 516, 525 (2003).

14           The whole point of the Settlement Agreement ███████████████████████████████████

15   ████████████████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████████████████

17   ██████████████████████████████████████████████████[4] To the extent that it is not abundantly

18   clear that ████████████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████████████████████████

23   ─────────────────

24   [4] To prove copyright infringement, a plaintiff must show (1) that it owns the copyright in a particular
     work and (2) that defendant copied original elements in the work. *Metcalf v. Bochco*, 294 F.3d 1069,

25   1072 (9th Cir. 2002). Copying is established by showing that defendant had access to the copyrighted
     work and that there is substantial similarity between the two works. *Id.* at 1073. For trade dress

26   infringement, a plaintiff must prove, among other things, that "there is a likelihood that the public will
     be confused by the infringing use" *Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 828

27   (9th Cir. 1997). Whether the public would be confused turns on if a reasonably prudent consumer
     would be confused about the source of the goods bearing the marks. *adidas Am., Inc. v. Skechers USA,*

28   *Inc.*, 890 F.3d 747, 755 (9th Cir. 2018). This is supported by evidence of actual confusion. *Id.*

1

2

3

4

5

6

7

8

9



10   These changes would also not pass muster under the lens of trade dress. Customers are still

11 likely to be confused by the similarities and have already proven unable to properly identify the source

12 of the games. *See* Section IV.B.2 *supra*; *see also* Lee Decl. ¶¶ 55-60; Bongco Decl. ¶¶ 51-60.

13      **3.      All NetEase** 

14              **Breaches of the Settlement Agreement**

15   Under                          the Settlement Agreement, NetEase was

16

17

18

19

20

21

22

23

24



25   Currently, NetEase hosts

26

27

28

10



NetEase would still be in breach

And a September 28, 2019 post on the *Rules of Survival* Facebook page depicts

Even accepting NetEase's strained reading of the Settlement Agreement, Without an injunction, NetEase will continue to shirk the Settlement Agreement, requiring PUBG to police NetEase's compliance while suffering irreparable harm.

**B.      PUBG Will Suffer Continued and Increasing Irreparable Harm Without the Requested Relief**

PUBG will suffer irreparable harm if NetEase is continued to distribute and promote its games.

1. **Under the Settlement Agreement,** 

2. **PUBG Will Suffer Irreparable Harm to Its Business Reputation**

Courts in the Ninth Circuit and this District have repeatedly held that harm to a plaintiff's reputation, damage to goodwill, and lost market share can constitute irreparable harm for purposes of a preliminary injunction motion. *See, e.g.*, *Herb Reed Enters, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013).[6] NetEase's _____ has

---

[6] *See also Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001); *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 846 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012)

12

engendered customer confusion between NetEase's games and BATTLEGROUNDS and has interfered with PUBG's ability to control BATTLEGROUNDS's brand reputation and goodwill with its customers. Lee Decl. ¶¶ 55-60; Bongco Decl. ¶¶ 51-60. Across numerous social media platforms, putative NetEase game players believe that PUBG's BATTLEGROUNDS and NetEase's *Rules of Survival* and *Knives Out* are one and the same.[7]  This confusion hurts PUBG's brand reputation because confused players often have negative opinions of *Rules of Survival* and attribute that negative opinion to PUBG. One user, for example, believed that *Rules of Survival* was "the Asian version of PUBG" and lamented that many "hackers and cheaters" plagued the game. Bongco Decl. ¶ 54. While PUBG's reputation is attached to the public's perception of NetEase, PUBG has no meaningful way to change that perception as it cannot control the way NetEase promotes its games.

This is precisely the type of misidentification and loss of control over business reputation contemplated by the case law. *See Herb Reed*, 736 F.3d at 1250 ("Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm"); *SunEarth*, 846 F. Supp. 2d at 1083 (finding irreparable harm in the absence of an injunction where plaintiffs had "invested significant time in building up a strong reputation" and "potential misidentification poses a serious threat to this goodwill and reputation"). Consumer confusion has caused and will continue to cause great and irreparable damage to PUBG's business and its reputation and goodwill in ways that cannot be readily quantified. *Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc*., 9 44 F.2d 597, 603 (9th Cir. 1991) ("[D]amage to . . . goodwill, qualif[ies] as irreparable harm.").

Moreover, PUBG has lost and will continue to lose market share and sales as a direct result of NetEase's ongoing breaches of the Settlement Agreement. ██████████████████████████

---

(finding irreparable harm in the absence of an injunction where plaintiffs had "invested significant time in building up a strong reputation" and "potential misidentification poses a serious threat to this goodwill and reputation"); *see also Duck Dive*, 2014 WL 1271220, at *2 (holding that while "monetary losses alone do not constitute irreparable injury, harm to a business' reputation and goodwill and loss of prospective customers do qualify as irreparable damage.").

[7] *See* Lee Decl. ¶ 56 (referring to *Knives Out* a user posted "I THOUGHT IT WAS PUBG MOBILE!"), *id.* ¶ 57 ("I wish there weren't so many different versions of pubg on mobile . . . knives out, survival Royale, last survivor . . . ."), *id.* ¶ 58 ("Everyone that plays the mobile PUBG game 'Knives Out', switch to the new English one 'Survivor Royale.'); Bongco Decl. ¶ 55 (referring to *Rules of Survival* a user posted, "PUBG tutorial"); *id.* ¶ 56 (referring to *Rules of Survival* a user posted, "PUBG for low pc"); *id.* ¶ 60 (stating *Knives Out* was "[v]ery good. IT'S LIKE [A] POOR MAN'S Pubg.").

1

2

3

4

5

6

7

8       **C.      The Equities Weigh in Favor of PUBG's Requested Relief.**

9       "A court balancing the equities will look to the possible harm that could befall the various

10      parties." *Maxim Integrated Prods. v. Quintana*, 654 F. Supp. 2d 1024, 1036 (N.D. Cal. 2009). Where

11      the plaintiff has presented "evidence that it has already lost business as a direct result of Defendants'

12      conduct" while "[i]n contrast, Defendants would not suffer hardship if the Court entered a narrowly

13      tailored injunction prohibiting them from employing unlawful means to compete against Plaintiff,"

14      the balance of equities weighs in PUBG's favor. *Western Directories, Inc. v. Golden Guide*

15      *Directories, Inc.*, 2009 WL 1625945, at *6-7 (N.D. Cal. June 8, 2009).

16      Here, the equities weigh in favor of granting PUBG's preliminary injunction motion. The

17      possible harm to PUBG is staggering. NetEase's games have already sown confusion with customers,

18      compromising PUBG's ability to control its brand reputation and goodwill. *See* Section IV.B.2 *supra*.

19

20                                                                 Having gained the benefit of a Settlement Agreement,

21      NetEase failed to honor its settlement obligations after having ample opportunity to do so, while PUBG

22      merely requests a preliminary injunction to require NetEase to abide by its settlement obligations.

23      **D.      Granting a Preliminary Injunction Is in the Public Interest**

24      Finally, the public interest would also be served by granting the requested preliminary

25      injunction. Where claims of copyright and trade dress infringement are concerned, the "Ninth Circuit

26      has held that public policy favors granting an injunction when there is a likelihood of consumer

27      confusion." *SMC Promotions. Inc. v. SMC Promotions*, 355 F. Supp. 2d 1127, 1137 (C.D. Cal. 2005).

28      "The public has an interest in avoiding confusion between two companies' products." *Internet*

1    *Specialties W., Inc. v. Milon-DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 993 (9th Cir. 2009).

2    Moreover, "a preliminary injunction is in the public interest because 'copyrighted works must be

3    protected as an incentive for people to create new works.'" *SMC Promotions*, 355 F. Supp. 2d at 1138.

4    As discussed above, PUBG has demonstrated a likelihood of success on the merits of its breach of

5    contract claim that stems from NetEase's violations of key terms of the Settlement Agreement █

6    ███████████████████████████████████████████████████████████████████████████████.

7    Accordingly, public policy considerations relating to avoiding public and consumer confusion weigh

8    in favor of granting a preliminary injunction in favor of PUBG.

9         Additionally, there is a public interest in the enforcement of settlement agreements and the

10   encouragement of settling litigation. *See Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390,

11   1398 (9th Cir.1991) ("In a case presenting no public interest that would be harmed by enforcement of

12   the [settlement agreement] the countervailing interest in settlement will be enough to justify

13   enforcement."). Thus, public policy considerations weigh in favor of granting PUBG's Motion.

14   **V.      NO BOND SHOULD BE REQUIRED**

15        The Court has "discretion as to the amount of security required, if any." *Barahona-Gomez v.*

16   *Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999). The likelihood of PUBG's success on the merits "tips in

17   favor of a minimal bond or no bond at all." *Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*,

18   766 F.2d 1319, 1326 (9th Cir. 1985). In light of the clear showing presented by PUBG regarding

19   NetEase's repeated and ongoing breaches of the Settlement Agreement, PUBG respectfully requests

20   that this Court exercise its discretion and find that no bond shall be required.

21   **VI.     CONCLUSION**

22        For each of the foregoing reasons, PUBG respectfully requests that this Court issue a

23   preliminary injunction against NetEase.

24

25

26

27

28

1    Dated: February 3, 2020          Respectfully submitted,

2                                    WINSTON & STRAWN LLP

3

4                          By:   */s/ David P. Enzminger*
                                  David P. Enzminger

5                                  Michael A. Tomasulo
                                  Diana Hughes Leiden

6

7                                  *Attorneys for Plaintiffs*
                                  PUBG Corporation and
                                  PUBG Santa Monica, Inc.